**IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION | MDL No. 2873<br><br>Case No. 2:23-cv-202-RMG |
| ARTHUR MENDOZA and MARY LOU MENDOZA<br><br>                    Plaintiffs,<br><br>        v.<br><br>THE 3M COMPANY, f/k/a MINNESOTA MINING AND MANUFACTURING CO., AGC CHEMICALS AMERICAS, INC., AMEREX CORP., ARCHROMA MANAGEMENT, L.L.C., ARCHROMA US, INC., ARKEMA, INC., BASF CORP., BUCKEYE FIRE EQUIPMENT CO., CARRIER GLOBAL CORP., CHEMDESIGN PRODUCTS, INC., CHEMGUARD, INC.,  CHEMICALS, INC., THE CHEMOURS CO., CHEMOURS COMPANY FC, L.LC., CHUBB FIRE, LTD., CLARIANT CORP.,   CORTEVA, INC., DEEPWATER CHEMICALS, INC., DU PONT DE NEMOURS, INC., E.I. DU PONT DE NEMOURS AND COMPANY, DYNAX CORP., KIDDE-FENWAL, INC., KIDDE P.L.C., INC.,  NATIONAL FOAM, INC., TYCO FIRE PRODUCTS, L.P., UNITED TECHNOLOGIES CORP., UTC FIRE & SECURITY AMERICAS CORP.<br><br>                    Defendants. | Honorable Richard Mark Gergel<br><br>**DIRECT FILED COMPLAINT AND JURY DEMAND PURSUANT TO CASE MANAGEMENT ORDER NO. 3** |

## COMPLAINT

Plaintiffs, ARTHUR MENDOZA and MARY LOU MENDOZA ("Plaintiffs"), by and through their attorneys, SINGLETON SCHREIBER, LLP, for their Complaint against 3M COMPANY, f/k/a Minnesota Mining and Manufacturing Company, BUCKEYE FIRE EQUIPMENT COMPANY, CHEMGUARD, INC., TYCO FIRE PRODUCTS L.P., NATIONAL FOAM, INC., E.I. DUPONT DE NEMOURS AND COMPANY, individually and as successor in interest to DuPont Chemical Solutions Enterprise, THE CHEMOURS COMPANY, individually and as successor in interest to DuPont Chemical Solutions Enterprise, THE CHEMOURS COMPANY FC, LLC, individually and as successor in interest to DuPont Chemical Solutions Enterprise, CORTEVA, INC., DUPONT DE NEMOURS INC., f/k/a DOWDUPONT, INC., ARKEMA INC., AGC CHEMICALS AMERICAS INC., DYNAX CORPORATION, KIDDE-FENWAL, INC., CLARIANT CORPORATION, BASF CORPORATION, UTC FIRE & SECURITY AMERICAS CORPORATION, INC., CARRIER GLOBAL CORPORATION and CHEMDESIGN PRODUCTS, INC. (collectively "Defendants") allege, on knowledge as to their own actions, and otherwise upon information and belief, as follows:

## NATURE OF THE ACTION

1.     This is a civil action for injunctive, equitable, punitive, declaratory relief, and any other damages that the Court or jury may deem appropriate for bodily injury arising from the intentional, malicious, knowing, reckless, and/or negligent acts and/or omissions of Defendants in connection with Aqueous Film-Forming Foam ("AFFF") containing Perfluorooctanoic Acid ("PFOA") and Perfluorooctanesulfonic acid ("PFOS") and/or the contamination of the blood and/or body of Plaintiff Arthur Mendoza. All Defendants were involved in the design, marketing,

development, manufacture, distribution, release, training, and sale of AFFF containing PFAS and/or underlying chemicals and/or products added to AFFF which contained PFAS.

2.     Aqueous Film Forming Foam ("AFFF") is a specialized substance designed to extinguish petroleum-based fires. It has been used for decades by both civilian and military firefighters to extinguish fires, as well as during training exercises in preparation for fires.

3.     AFFF contains synthetic, toxic per- and polyfluoroalkyl substances collectively known as "PFAS."[1] PFAS bind to proteins in the blood of animals and humans exposed to such materials and not only remain and persist over long periods of time, but, due to their unique chemical structure, accumulate and build up in the blood/body of the exposed individuals with each additional exposure, no matter how small. PFAS can travel long distances, move through soil, seep into groundwater, or be carried through air.

4.     Defendants collectively designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold and/or otherwise handled and/or used AFFF with knowledge that it contained highly toxic and long lasting PFASs, which would contaminate Plaintiff Arthur Mendoza's blood and/or body with PFAS, and the resultant biopersistence and bioaccumulation of such PFAS in the blood and/or body of Plaintiff Arthur Mendoza. Further, defendants designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which

---

[1] "PFAS" includes but is not limited to: perfluorooctanoic acid ("PFOA") and perfluorooctane sulfonic acid ("PFOS") and related chemicals, including but not limited to those that degrade to PFOA and/or PFOS, and including but not limited to C3-C-15 PFAS chemicals, such as perfluorohexanesulfonate (PFHxS), perfluorononanoate (PFNA), perfluorobutanesulfonate (PFBS), perfluorohexanoate (PFHxA), perfluoroheptanoate (PFHpA), perfluoroundecanoate (PFUnA), perfluorododecanoate (PFDoA), HFPA Dimer Acid (CAS # 13252 -13- 6/C3 Dimer Acid/P-08-508/FRD903/GX903/C3DA/GenX), and HFPA Dimer Acid Ammonium Salt (CAS#62037-80-3/ammonium salt of C3 Dimer Acid/P-08- 509/FRD902/GX903/GenX)

contained PFAS for use in firefighting.

5.    As a result, Plaintiff Arthur Mendoza was exposed to AFFF containing PFAS and suffered severe personal injuries as a result.

## JURISDICTION AND VENUE

6.    This Court has jurisdiction over the subject matter of this Complaint, pursuant to 28 U.S.C. §1332(a), as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000. This Court has jurisdiction over the commencement date of these actions pursuant to 42 U.S.C. § 9658, in the Superfund Amendments and Reauthorization Act of 1986 amendment to the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA").

7.    Plaintiffs are filing this complaint as permitted by Case Management Order No. 3 ("CMO #3") issued by Judge Richard M. Gergel of this Court. Pursuant to CMO #3, Plaintiffs designate the United States District Court for the Eastern District of California, Sacramento Division, as the "home venue" where Plaintiffs would have otherwise filed suit pursuant to 28 U.S.C. § 1391. But for CMO #3, venue is proper in the United States District Court for the Eastern District of California, Sacramento Division, in that the events or omissions giving rise to the claim occurred in that district. Plaintiffs respectfully request that, at the time of the transfer of this action back to the trial court for further proceedings, this case be transferred to the United States District Court for the Eastern District of California, Sacramento Division.

8.    United States District Court for the Eastern District of California, Sacramento Division has personal jurisdiction over the Defendants because, at all times relevant to this lawsuit, the Defendants manufactured, designed, marketed, distributed, released, promoted, and/or otherwise sold (directly or indirectly) PFAS-containing AFFF products to various

locations in the state of California. Therefore, the exercise of jurisdiction over the Defendants by the United States District Court for the Eastern District of California, Sacramento Division does not offend traditional notions of fair play and substantial justice.

## PARTIES

### PLAINTIFF ARTHUR MENDOZA

9.      Plaintiff, Arthur Mendoza, is a resident and citizen of Winters, California.

10.     Arthur Mendoza was exposed to Defendants' AFFF products while employed as a firefighter and as a firefighter training instructor.

11.     As a result of Arthur Mendoza's exposure to Defendants' AFFF products, he was diagnosed with kidney cancer, which has caused him to undergo treatment (including the removal of a kidney), and to suffer severe personal injuries, pain, suffering, and emotional distress.

12.     The injuries, pain, suffering, and emotional distress were caused by Defendants' AFFF products.

### DEFENDANTS

13.     The term "Defendant" or "Defendants" refers to all Defendants named herein jointly and severally. Any and all references to a Defendant or Defendants in this Complaint include any predecessors, successors, parents, subsidiaries, affiliates, and divisions of the named Defendants.

14.     When reference is made in this complaint to any act or omission of any of the Defendants, it shall be deemed that the officers, directors, agents, employees, or representatives of the defendants committed or authorized such act or omission, or failed to adequately supervise or properly control or direct their employees while engaged in the management, direction,

operation, or control of the affairs of defendants, and did so while acting within the scope of their duties, employment or agency.

15.    At all times relevant to this litigation, upon information and belief, each of the defendants designed, developed, manufactured, marketed, and/or sold the AFFF or fluorochemical products containing PFOA or PFOS used by firefighters throughout the country, including in California.

16.    Each of the defendants designed, developed, manufactured, marketed, and/or sold the AFFF or fluorochemical products containing PFOA or PFOS to which Plaintiff Arthur Mendoza was exposed and directly and proximately caused Plaintiff Arthur Mendoza to develop kidney cancer and to suffer severe personal injuries, pain, suffering, and emotional distress.

17.    Defendant, 3M Company, f/k/a Minnesota Mining and Manufacturing Company, ("3M"), is a Delaware corporation and does business throughout the United States, including conducting business in California. 3M has its principal place of business at 3M Center, St. Paul, Minnesota 55133.

18.    3M designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint in such a way as to result in the contamination of Plaintiff Arthur Mendoza's blood and/or body with PFAS, and the biopersistence and bioaccumulation of such PFAS in his blood and/or body.

19.    Defendant, AGC Chemicals Americas Inc. ("AGC Chemicals"), is a Delaware Corporation and does business through the United States. AGC Chemicals has its principal place of business at 55 E. Uwchlan Ave, Ste 201, Exton, Pennsylvania 19341.

20.    AGC Chemicals, manufactured fluoropolymer chemicals and surfactants for AFFF manufacturers who designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint in such a way as to result in the contamination of Plaintiff Arthur Mendoza's blood and/or body with PFAS, and the biopersistence and bioaccumulation of such PFAS in his blood and/or body.

21.    Defendant, Amerex Corp. ("Amerex"), is an Alabama corporation organized and existing under the laws of Alabama and does business throughout the United States, including conducting business in California. Amerex has its principal place of business at 7595 Gadsden Highway, Trussville, AL 35173.

22.    Amerex designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold and/or otherwise handled and/or designed and manufactured components of and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint in such a way as to result in the contamination of Plaintiff Arthur Mendoza's blood and/or body with PFAS, and the biopersistence and bioaccumulation of such PFAS in his blood and/or body.

23.    Defendant, Archroma Management, LLC, is a foreign corporation and does business throughout the United States, including conducting business in California. Archroma Management, LLC has its principal place of business at Neuhofstrasse 11, 4153 Reinach, Basel-Land, Switzerland.

24.    Archroma Management, LLC is successor to Clariant Corporation's Textile Chemicals, Paper Specialties, and Emulsions businesses who designed, marketed, developed,

manufactured, distributed, released, trained users, produced instructional materials, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint in such a way as to result in the contamination of Plaintiff Arthur Mendoza's blood and/or body with PFAS, and the biopersistence and bioaccumulation of such PFAS in his blood and/or body.

25.    Defendant Archroma U.S., Inc. ("Archroma"), is a Delaware corporation and does business throughout the United States, including conducting business in California. Archroma has its principal place of business at 4000 Monroe Road, Charlotte, North Carolina 28205.

26.    Archroma designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint, including in South Carolina, in such a way as to result in the contamination of Plaintiff Arthur Mendoza's blood and/or body with PFAS, and the biopersistence and bioaccumulation of such PFAS in his blood and/or body.

27.    Defendant, Arkema, Inc., is a Pennsylvania corporation and does business throughout the United States, including conducting business in California. Arkema, Inc. has its principal place of business at 900 1st Avenue, King of Prussia, Pennsylvania 19406.

28.    Arkema, Inc., designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint in such a way as to result in the contamination of Plaintiff Arthur Mendoza's blood and/or body with PFAS, and the biopersistence and bioaccumulation of such PFAS in his blood and/or body.

29.    Defendant, BASF Corporation ("BASF"), is a Delaware corporation doing business throughout the United States. BASF Corporation has its principal place of business at

100 Park Ave., Florham Park, New Jersey 07932.

30.    BASF is successor-in-interest to Ciba-Geigy Corp. and Ciba Inc., which manufactured fluorosurfactants for AFFF manufacturers who designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint in such a way as to result in the contamination of Plaintiff Arthur Mendoza's blood and/or body with PFAS, and the biopersistence and bioaccumulation of such PFAS in his blood and/or body.

31.    Defendant Buckeye Fire Equipment Company ("Buckeye") is an Ohio corporation and does business throughout the United States, including conducting business in California. Buckeye has its principal place of business at 110 Kings Road, Mountain, North Carolina 28086.

32.    Buckeye designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint in such a way as to result in the contamination of Plaintiff Arthur Mendoza's blood and/or body with PFAS, and the biopersistence and bioaccumulation of such PFAS in his blood and/or body.

33.    Defendant, Carrier Global Corporation ("Carrier Global"), is a Delaware corporation and does business throughout the United States, including conducting business in California. Carrier Global Corporation has its principal place of business at 13995 Pasteur Boulevard, Palm Beach Gardens, Florida 33418.

34.    Carrier Global Corporation inherited UTC's Fire & Security businesses, including

the Chubb Fire and Kidde-Fenwall brands, when it was formed in March 2020. Carrier Global Corporation is the parent corporation of Kidde-Fenwal Inc., a manufacturer of AFFF who designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint in such a way as to result in the contamination of Plaintiff Arthur Mendoza's blood and/or body with PFAS, and the biopersistence and bioaccumulation of such PFAS in his blood and/or body.

35.    Defendant, ChemDesign Products, Inc. ("ChemDesign"), f/k/a "SpecialtyChem Acquisition Corp.", is a Texas Corporation that does business throughout the United States, including conducting business in California. ChemDesign Products, Inc. has its principal place of business at 2 Stanton St., Marinette, Wisconsin 54143.

36.    ChemDesign manufactured fluorosurfactants for AFFF manufacturers, Tyco and Chemguard, who designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint in such a way as to result in the contamination of Plaintiff Arthur Mendoza's blood and/or body with PFAS, and the biopersistence and bioaccumulation of such PFAS in his blood and/or body.

37.    Defendant Chemguard, Inc. ("Chemguard") is a Wisconsin corporation and does business throughout the United States, including conducting business in California. Chemguard has its principal place of business at One Stanton Street, Marinette, Wisconsin 54143.

38.    Chemguard designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold and/or otherwise handled and/or used AFFF

10

containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint in such a way as to result in the contamination of Plaintiff Arthur Mendoza's blood and/or body with PFAS, and the biopersistence and bioaccumulation of such PFAS in his blood and/or body.

39.    Defendant, Chemicals, Inc., is a Texas Corporation and does business throughout the United States, including conducting business in California. Chemicals, Inc. has its principal place of business at 12321 Hatcherville Rd., Baytown, Texas 77521.

40.    Chemicals, Inc. manufactured fluorochemicals for AFFF manufacturers who designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint in such a way as to result in the contamination of Plaintiff Arthur Mendoza's blood and/or body with PFAS, and the biopersistence and bioaccumulation of such PFAS in his blood and/or body.

41.    Defendant The Chemours Company ("Chemours"), is a Delaware corporation and does business throughout the United States, including conducting business in California. Chemours has its principal place of business 1007 Market Street, Wilmington, Delaware 19898.

42.    Chemours designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint in such a way as to result in the contamination of Plaintiff Arthur Mendoza's blood and/or body with PFAS, and the biopersistence and bioaccumulation of such PFAS in his blood and/or body.

43.    Defendant Chemours Company FC, LLC ("Chemours FC"), is a Delaware corporation and does business throughout the United States, including conducting business in

California. Chemours has its principal place of business 1007 Market Street, Wilmington, Delaware 19898.

44.     Chemours FC designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint in such a way as to result in the contamination of Plaintiff Arthur Mendoza's blood and/or body with PFAS, and the biopersistence and bioaccumulation of such PFAS in his blood and/or body.

45.     Defendant Chubb Fire, Ltd. ("Chubb") is a foreign private limited company, with offices at Littleton Road, Ashford, Middlesex, United Kingdom TW15 1TZ. Upon information and belief, Chubb is registered in the United Kingdom with a registered number of 134210. Upon information and belief, Chubb is or has been composed of different subsidiaries and/or divisions, including but not limited to, Chubb Fire & Security Ltd., Chubb Security, PLC, Red Hawk Fire & Security, LLC, and/or Chubb National Foam, Inc.

46.     Chubb Fire designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint in such a way as to result in the contamination of Plaintiff Arthur Mendoza's blood and/or body with PFAS, and the biopersistence and bioaccumulation of such PFAS in his blood and/or body.

47.     Defendant, Clariant Corporation ("Clariant"), is a New York corporation and does business throughout the United States, including conducting business in California. Clariant Corporation has its principal place of business at 4000 Monroe Road, Charlotte, North Carolina 28205.

48.     Clariant was a fluruotelomer manufacturer which produced fluorosurfactants for

AFFF manufacturers that designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint in such a way as to result in the contamination of Plaintiff Arthur Mendoza's blood and/or body with PFAS, and the biopersistence and bioaccumulation of such PFAS in his blood and/or body. Clariant acquired by SK Capital Partners and became Archroma Management LLC.

49.    Defendant Corteva, Inc. ("Corteva") is a Delaware Corporation that conducts business throughout the United States. Its principal place of business is 974 Center Rd, Wilmington, Delaware 19805.

50.    Corteva designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint in such a way as to result in the contamination of Plaintiff Arthur Mendoza's blood and/or body with PFAS, and the biopersistence and bioaccumulation of such PFAS in his blood and/or body.

51.    Defendant, Deepwater Chemicals, Inc., is a Delaware corporation and does business throughout the United States, including conducting business in California. Deepwater Chemicals, Inc. has its principal place of business at 196122 E County Road 40, Woodward, Oklahoma 73801.

52.    Deepwater Chemicals, Inc. manufactured fluorochemicals for AFFF manufacturers which designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint in such a way as to result in the contamination of Plaintiff Arthur Mendoza's blood and/or body with PFAS, and the

biopersistence and bioaccumulation of such PFAS in his blood and/or body.

53.     Defendant Du Pont de Nemours Inc. (f/k/a DowDuPont, Inc.) ("DowDuPont"), is a Delaware corporation and does business throughout the United States, including conducting business in California. DowDuPont, has its principal place of business at 974 Centre Road, Wilmington, Delaware 19805 and 2211 H.H. Dow Way, Midland, Michigan 48674.

54.     DowDuPont designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint in such a way as to result in the contamination of Plaintiff Arthur Mendoza's blood and/or body with PFAS, and the biopersistence and bioaccumulation of such PFAS in his blood and/or body.

55.     Defendant E. I. du Pont de Nemours and Company ("DuPont"), is a Delaware corporation and does business throughout the United States, including conducting business in California. DuPont has its principal place of business at 1007 Market Street, Wilmington, Delaware 19898.

56.     DuPont designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint in such a way as to result in the contamination of Plaintiff Arthur Mendoza's blood and/or body with PFAS, and the biopersistence and bioaccumulation of such PFAS in his blood and/or body.

57.     Defendant Dynax Corporation ("Dynax") is a Delaware Corporation that conducts business throughout the United States. Its principal place of business is 103 Fairview Park Drive, Elmsford, New York, 10523-1544.

58.     Dynax designed, marketed, developed, manufactured, distributed, released,

trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint in such a way as to result in the contamination of Plaintiff Arthur Mendoza's blood and/or body with PFAS, and the biopersistence and bioaccumulation of such PFAS in his blood and/or body.

59.    Defendant Kidde-Fenwal, Inc. ("Kidde-Fenwal") is a corporation organized under the laws of the State of Delaware and does business throughout the United States, including conducting business in California. Kidde-Fenwal has its principal place of business at One Financial Plaza, Hartford, Connecticut 06101. Kidde-Fenwal is the successor- in-interest to Kidde Fire Fighting, Inc. (f/k/a Chubb National Foam, Inc. f/k/a National Foam System, Inc.) (collectively, "Kidde/Kidde Fire").

60.    Kidde-Fenwal designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint in such a way as to result in the contamination of Plaintiff Arthur Mendoza's blood and/or body with PFAS, and the biopersistence and bioaccumulation of such PFAS in his blood and/or body.

61.    Defendant Kidde P.L.C., Inc. ("Kidde P.L.C.") is a Delaware corporation organized and existing under the laws of the State of Delaware and does business throughout the United States, including conducting business in California. Kidde P.L.C. has its principal place of business at One Carrier Place, Farmington, Connecticut 06034. Upon information and belief, Kidde PLC was formerly known as Williams Holdings, Inc. and/or Williams US, Inc.

62.    Kidde P.L.C. designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint in such a way as to result in the

contamination of Plaintiff Arthur Mendoza's blood and/or body with PFAS, and the biopersistence and bioaccumulation of such PFAS in his blood and/or body.

63.    Defendant National Foam, Inc. ("National Foam") is a Delaware corporation and does business throughout the United States, including conducting business in California. National Foam has its principal place of business at 350 East Union Street, West Chester, Pennsylvania 19382.

64.    National Foam designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint in such a way as to result in the contamination of Plaintiff Arthur Mendoza's blood and/or body with PFAS, and the biopersistence and bioaccumulation of such PFAS in his blood and/or body.

65.    Defendant Tyco Fire Products, LP, as successor-in-interest to The Ansul Company ("Tyco"), is a Delaware limited partnership and does business throughout the United States, including conducting business in California. Tyco has its principal place of business at One Stanton Street, Marinette, Wisconsin 54143. Tyco manufactured and currently manufactures the Ansul brand of products, including Ansul brand AFFF containing PFAS.

66.    Tyco is the successor in interest to the corporation formerly known as The Ansul Company ("Ansul"). At all times relevant, Tyco/Ansul designed, marketed, developed, manufactured, distributed released, trained users, produced instructional materials, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint in such a way as to result in the contamination of Plaintiff Arthur Mendoza's blood and/or body with PFAS, and the

16

biopersistence and bioaccumulation of such PFAS in his blood and/or body.

67.    Defendant United Technologies Corporation ("United Technologies") is a foreign corporation organized and existing under the laws of the State of Delaware and does business throughout the United States, including conducting business in California. United Technologies has its principal place of business at 8 Farm Springs Road, Farmington, Connecticut 06032.

68.    United Technologies designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint in such a way as to result in the contamination of Plaintiff Arthur Mendoza's blood and/or body with PFAS, and the biopersistence and bioaccumulation of such PFAS in his blood and/or body.

69.    Defendant UTC Fire & Security Americas Corporation, Inc. (f/k/a GE Interlogix, Inc.) ("UTC") is a North Carolina corporation and does business throughout the United States, including conducting business in California. UTC has principal place of business at 3211 Progress Drive, Lincolnton, North Carolina 28092. Upon information and belief, Kidde-Fenwal, Inc. is part of the UTC Climate Control & Security unit of United Technologies Corporation.

70.    UTC designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint in such a way as to result in the contamination of Plaintiff Arthur Mendoza's blood and/or body with PFAS, and the biopersistence and bioaccumulation of such PFAS in his blood and/or body.

## **GENERAL FACTUAL ALLEGATIONS**

71.    AFFF is a mixture of chemicals, including PFAS, used to put out petroleum-based fuel and other flammable liquid fires. AFFF lowers surface tension of the fuel, which

starves a fire of its oxygen supply. While the fluorinated compounds in AFFF work well to extinguish fires, they are not biodegradable. These toxic chemicals accumulate and contaminate the bodies of animals and humans who come in contact with or consume them.

72.    Defendants designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled AFFF containing toxic PFAS and/or underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting that were used at fire departments, airports, air force bases and naval bases around the country.

73.    Defendants have each designed, marketed, developed, distributed, sold, manufactured, released, trained users on, produced instructional materials for, and/or otherwise handled and/or used AFFF containing PFAS, and/or underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting, in such a way as to cause the contamination of Plaintiff Arthur Mendoza's blood and/or body with PFAS, and the resultant biopersistence and bioaccumulation of such PFAS in the blood and/or body of Plaintiff Arthur Mendoza.

74.    Prior to commercial development and large-scale manufacture and use of AFFF containing PFAS, no such PFAS had been found, detected, or were present in human blood.

75.    By at least the end of the 1960s, animal toxicity testing performed by Defendants manufacturing and/or using PFAS, and/or underlying chemicals and/or products added to AFFF, indicated that exposure to such materials, including at least PFOA, resulted in various adverse health effects among multiple species of laboratory animals, including toxic effects to the liver, testes, adrenals, and other organs and bodily systems.

76.    By at least the end of the 1960s, additional research and testing performed by

Defendants manufacturing and/or using PFAS, and/or underlying chemicals and/or products added to AFFF, indicated that such materials, including at least PFOA, because of their unique chemical structure, were resistant to environmental degradation and would persist in the environment essentially unaltered if allowed to enter the environment.

77.     By at least the end of the 1970s, additional research and testing performed by Defendants manufacturing and/or using PFAS, and/or underlying chemicals and/or products added to AFFF, indicated that one or more such materials, including at least PFOA and PFOS, because of their unique chemical structure, would bind to proteins in the blood of animals and humans exposed to such materials where such materials would not only remain and persist over long periods of time but would accumulate and build up in the blood/body of the exposed individuals with each additional exposure, no matter how small.

78.     Defendants manufacturing and/or using AFFF containing PFAS, and/or underlying chemicals and/or products added to AFFF, released such PFAS into the environment during, as a result of, or in connection with their manufacturing and other commercial operations, including into the air, surface waters, ground water, soils, landfills, and/or through their involvement and/or participation in the creation of consumer or other commercial products and materials and related training and response and instructional materials and activities that Defendants knew, foresaw, and/or reasonably should have known and/or foreseen would expose Plaintiff Arthur Mendoza to such PFAS.

79.     By at least the end of the 1970s, Defendants manufacturing and/or using PFAS, and/or underlying chemicals and/or products added to AFFF, including at least DuPont and 3M, were aware that PFAS, including at least PFOA and PFOS, had been detected not only in the blood of workers at PFAS manufacturing facilities, but in the blood of the general population of

19

the United States in people not known to be working at or living near PFAS manufacturing and/or use facilities, indicating to such Defendants that continued manufacture and use of such PFAS materials would inevitably result in continued and increased levels of PFAS getting into the environment and into human blood across the United States, even in areas nowhere near or associated with specific PFAS manufacturing or use facilities.

80.     By at least the end of the 1980s, additional research and testing performed by Defendants manufacturing and/or using PFAS, and/or underlying chemicals and/or products added to AFFF, indicated that at least one such PFAS, PFOA, had caused Leydig cell (testicular) tumors in a chronic cancer study in rats, resulting in at least one such Defendant, DuPont, classifying such PFAS internally as a confirmed animal carcinogen and possible human carcinogen.

81.     It was understood by Defendants by at least the end of the 1980s that a chemical that caused cancer in animal studies must be presumed to present a cancer risk to humans, unless the precise mechanism of action by which the tumors were caused was known and it was known that such mechanism of action would not be operative and/or occur in humans.

82.     By at least the end of the 1980s, scientists had not determined the precise mechanism of action by which any PFAS caused tumors and thus prevailing scientific principles of carcinogenesis classification mandated that Defendants presume any such PFAS material that caused tumors in animal studies could present a potential cancer risk to exposed humans.

83.     By at least the end of the 1980s, additional research and testing performed by Defendants manufacturing and/or using PFAS, and/or underlying chemicals and/or products added to AFFF, including at least DuPont, indicated that elevated incidence of certain cancers and other adverse health effects, including elevated liver enzymes and birth defects, had been

observed among workers exposed to such materials, including at least PFOA, but such data was not published, provided to governmental entities as required by law, or otherwise publicly disclosed at the time.

84.    By at least the end of the 1980s, Defendants, including at least 3M and DuPont, understood that, not only did these PFAS, including at least PFOA and PFOS, get into and persist and accumulate in human blood and in the human body, but that once in the human body and blood, particularly the longer-chain PFAS, such as PFOS and PFOA, had a long half-life, meaning that they would take a very long time (years) before even half of the material would start to be eliminated (assuming no further exposures), which allowed increasing levels of the chemicals to build up and accumulate in the blood and/or body of exposed individuals over time, particularly if any level of exposures continued.

85.    By at least the end of the 1990s, additional research and testing performed by Defendants manufacturing and/or using PFAS, including at least 3M and DuPont, indicated that at least one such PFAS, PFOA, had caused a triad of tumors (Leydig cell (testicular), liver, and pancreatic) in a second chronic cancer study in rats.

86.    By at least the end of the 1990s, the precise mechanism(s) of action by which any PFAS caused each of the tumors found in animal studies had still not been identified, mandating that Defendants continue to presume that any such PFAS that caused such tumors in animal studies could present a potential cancer risk to exposed humans.

87.    By at least 2010, additional research and testing performed by Defendants manufacturing and/or using PFAS, and/or underlying chemicals and/or products added to AFFF, including at least 3M and DuPont, revealed multiple potential adverse health impacts among workers exposed to such PFAS, including at least PFOA, such as increased cancer incidence,

hormone changes, lipid changes, and thyroid and liver impacts, which such Defendants' own scientists, lawyers, and advisors recommended be studied further to assess the extent to which PFAS exposures were causing those effects.

88.    When the United States Environmental Protection Agency ("USEPA") and other state and local public health agencies and officials first began learning of PFAS exposures in the United States and potential associated adverse health effects, Defendants repeatedly assured and represented to such entities and the public that such exposures presented no risk of harm and were of no legal, toxicological, or medical significance of any kind.

89.    After USEPA and other entities began asking Defendants to stop manufacturing and/or using certain PFAS, Defendants began manufacturing and/or using and/or began making and/or using more of certain other and/or "new" PFAS, including PFAS materials with six or fewer carbons, such as GenX (collectively "Short-Chain PFAS").

90.    Defendants manufacturing and/or using Short-Chain PFAS, including at least DuPont and 3M, are aware that one or more such Short-Chain PFAS materials also have been found in human blood.

91.    By at least the mid-2010s, Defendants, including at least DuPont and Chemours, were aware that at least one Short-Chain PFAS had been found to cause the same triad of tumors (Leydig (testicular), liver, and pancreatic) in a chronic rat cancer study as had been found in a chronic rat cancer study with a non-Short-Chain PFAS.

92.    As of today's date, the precise mechanism(s) of action by which any PFAS causes each of the tumors found in animal studies has(ve) not been identified, mandating that Defendants presume that any such PFAS that caused such tumors in animal studies be presumed to present a potential cancer risk to exposed humans.

93.     Research and testing performed by and/or on behalf of Defendants making and/or using Short-Chain PFAS indicates that such Short-Chain PFAS materials present the same, similar, and/or additional risks to human health as had been found in research on other PFAS materials, including cancer risk.

94.     Nevertheless, Defendants repeatedly assured and represented to governmental entities and the public (and continue to do so) that the presence of PFAS, including these Short-Chain PFAS, in human blood at the levels found within the United States presents no risk of harm and is of no legal, toxicological, or medical significance of any kind.

95.     As of today's date, Defendants, through their membership in the FluoroCouncil, represent to the public through the FluoroCouncil website that: "The newer, short-chain chemistries currently in use are well studied [and] … [t]he science supports the conclusion that the newer FluoroTechnology is not expected to present a significant risk to humans and the environment."

96.     At all relevant times, Defendants, individually and/or collectively, have had the resources and ability but have intentionally, purposefully, recklessly, and/or negligently chosen not to fund or sponsor any study, investigation, testing, and/or other research of any kind of the nature Defendants claim is necessary to confirm and/or prove that the presence of any one and/or combination of PFAS in human blood causes any disease and/or adverse health impact of any kind in humans, presents any risk of harm to humans, and/or is of any legal, toxicological, or medical significance to humans, according to standards Defendants deem acceptable.

97.     Even after an independent science panel, known as the "C8 Science Panel," publicly announced in the 2010s that human exposure to 0.05 parts per billion or more of one PFAS, PFOA, in drinking water for one year or more had "probable links" with certain human

diseases, including kidney cancer, testicular cancer, ulcerative colitis, thyroid disease, preeclampsia, and medically-diagnosed high cholesterol, Defendants repeatedly assured and represented to governmental entities, their customers, and the public (and continue to do so) that the presence of PFAS in human blood at the levels found within the United States presents no risk of harm and is of no legal, toxicological, or medical significance of any kind, and have represented to and assured such governmental entities, their customers, and the public (and continue to do so) that the work of the independent C8 Science Panel was inadequate to satisfy the standards of Defendants to prove such adverse effects upon and/or any risk to humans with respect to PFAS in human blood.

98.     At all relevant times, Defendants shared and/or should have shared among themselves all relevant information relating to the presence, biopersistence, and bioaccumulation of PFAS in human blood and associated toxicological, epidemiological, and/or other adverse effects and/or risks.

99.     As of the present date, blood serum testing and analysis by Defendants, independent scientific researchers, and/or government entities has confirmed that PFAS materials are clinically demonstrably present in approximately 99% of the current population of the United States.

100.     There is no naturally-occurring "background," normal, and/or acceptable level or rate of any PFAS in human blood, as all PFAS detected and/or present in human blood is present and/or detectable in such blood as a direct and proximate result of the acts and/or omissions of Defendants.

101.     Data exists to indicate that the presence, accumulation, toxic invasion, and/or persistence of PFAS in human blood, including that of Plaintiff Arthur Mendoza, is injurious and

physically harmful and results in unwanted, unconsented-to, and deleterious alterations, changes, and/or other presently-existing physical injury and/or adverse impacts to the blood and/or body of Plaintiff Arthur Mendoza, including but not limited to subcellular injuries, including but not limited to biopersistence and bioaccumulation within the body.

102.    At all relevant times, Defendants, through their acts and/or omissions, controlled, minimized, trivialized, manipulated, and/or otherwise influenced the information that was published in peer-review journals, released by any governmental entity, and/or otherwise made available to the public relating to PFAS in human blood and any alleged adverse impacts and/or risks associated therewith, effectively preventing Plaintiff Arthur Mendoza from discovering the existence and extent of any injuries/harm as alleged herein.

103.    At all relevant times, Defendants, through their acts and/or omissions, took steps to attack, challenge, discredit, and/or otherwise undermine any scientific studies, findings, statements, and/or other information that proposed, alleged, suggested, or even implied any potential adverse health effects or risks and/or any other fact of any legal, toxicological, or medical significance associated with the presence of PFAS in human blood.

104.    At all relevant times, Defendants, through their acts and/or omissions, concealed and/or withheld information from their customers, governmental entities, and the public that would have properly and fully alerted Plaintiff Arthur Mendoza to the legal, toxicological, medical, or other significance and/or risk from having any PFAS material in his blood.

105.    At all relevant times, Defendants encouraged the continued and even further increased use and release into the environment of PFAS by their customers and others, including but not limited to through manufacture, use, and release, of AFFF containing PFAS and/or emergency responder protection gear or equipment coated with materials made with or

containing PFAS, and tried to encourage and foster the increased and further use of PFAS in connection with as many products/uses/and applications as possible, despite knowledge of the toxicity, persistence, and bioaccumulation concerns associated with such activities.

106.    Once governmental entities and regulators began learning of the potential toxicity, persistence, and bioaccumulation concerns associated with PFAS, Defendants cited to the pervasive use of such PFAS throughout numerous sectors of the American economy (which they had intentionally and purposefully encouraged and created) and the widespread presence of PFAS in blood of Americans (which they also had negligently, recklessly, and/or intentionally caused) as an excuse and/or reason not to restrict or regulate PFAS, essentially arguing that the issues associated with PFAS had become "too big to regulate."

107.    To this day, Defendants deny that the presence of any PFAS in human blood, at any level, is an injury or presents any harm or risk of harm of any kind, or is otherwise of any legal, toxicological, or medical significance.

108.    To this day, Defendants deny that any scientific study, research, testing, or other work of any kind has been performed that is sufficient to suggest to the public that the presence of any PFAS material in human blood, at any level, is of any legal, toxicological, medical, or other significance.

109.    Defendants, to this day, affirmatively assert and represent to governmental entities, their customers, and the public that there is no evidence that any of the PFAS found in human blood across the United States causes any health impacts or is sufficient to generate an increased risk of future disease sufficient to warrant diagnostic medical testing, often referring to existing studies or data as including too few participants or too few cases or incidents of disease to draw any scientifically credible or statistically significant conclusions.

110.    Defendants, to this day, use and rely upon what they claim is this same "lack of definitive evidence of causation" as between any PFAS and any adverse human health effect to oppose and try to discourage regulatory and/or legislative efforts to limit, restrict, and/or address PFAS impacts to the environment or human health, and to oppose, reject, and deny claims that PFAS has caused any injury or increased the risk of any adverse human health effects.

111.    Yet, to this day, Defendants knowingly, willfully, purposefully, intentionally, recklessly, and/or negligently refuse to fund or conduct any scientific study, research, testing, and/or other work of any kind that is extensive or comprehensive enough, according to Defendants, to generate results that Defendants will accept (outside the context of an existing written settlement agreement such as DuPont entered with respect to certain PFOA exposures, which created the C8 Science Panel) as sufficient to confirm a causal connection between any single or combination of PFAS in human blood and any injury, human disease, adverse human health impact, and/or a risk sufficient to warrant any personal injury compensation or future diagnostic medical testing, including medical monitoring.

112.    Defendants were and/or should have been aware, knew and/or should have known, and/or foresaw or should have foreseen that their marketing, development, manufacture, distribution, release, training and response of users, production of instructional materials, sale and/or other handling and/or use of AFFF containing PFAS, and/or underlying chemicals and/or products added to AFFF would result in the contamination of the blood and/or body of Plaintiff Arthur Mendoza with PFAS, and the biopersistence and bioaccumulation of such PFAS in his blood and/or body.

113.    Defendants were and /or should have been aware, or knew and/or should have known, and/or foresaw or should have foreseen that allowing PFAS to contaminate the blood

and/or body of Plaintiff Arthur Mendoza would cause injury, irreparable harm, and/or unacceptable risk of such injury and/or irreparable harm to Plaintiff Arthur Mendoza.

114.    Defendants did not seek or obtain permission or consent from Plaintiff Arthur Mendoza before engaging in such acts and/or omissions that caused, allowed, and/or otherwise resulted in Plaintiff Arthur Mendoza's exposure to AFFF and the contamination of Plaintiff Arthur Mendoza's blood and/or body with PFAS materials, and resulting biopersistence and bioaccumulation of such PFAS in his blood and/or body.

## PLAINTIFF ARTHUR MENDOZA'S EXPOSURE TO AFFF

115.    For decades, AFFF containing PFAS has been used in firefighter training and response exercises at military bases, airports and fire departments across the country, including the Winters Fire Department, located in the City of Winters in Yolo County, California and other mutual aid jurisdictions within the State of California. The AFFF containing PFAS, which was designed, manufactured, marketed, distributed and/or sold by Defendants, was expected to, and did, reach the Winters Fire Department in Yolo County, California, and other mutual aid jurisdictions in the State of California, without substantial change in the condition in which it was sold.

116.    The descriptive labels and data sheets for the AFFF containing PFAS utilized at the City of Winters Fire Department in Yolo County, California, and in other mutual aid jurisdictions within the State of California, did not reasonably nor adequately describe the hazards of AFF containing PFAS. Defendants knew or should have known of these hazards when the product was distributed. Defendants manufactured, designed, marketed, distributed, and/or sold the AFFF, and/or underlying chemicals and/or products added to AFFF, knowing that the PFAS contained in the AFFF presented an unreasonable risk to human health and are

inherently dangerous. knowing that the PFAS contained in the AFFF presented an unreasonable risk to human health and are inherently dangerous.

117.    Plaintiff Arthur Mendoza has worked as a firefighter for the Winters Fire Department in Yolo County, California for more than 30 years, from approximately 1990 through the present time, holding various positions including cadet, fire fighter, engineer, lieutenant, captain, battalion chief and fire chief.  During that time, Arthur Mendoza also worked as a firefighter at various locations in the State of California in a mutual aid capacity.

118.    Throughout the course of Arthur Mendoza's employment as a Firefighter, he used and was exposed to AFFF containing PFAS in firefighting training and response exercises and used equipment and gear treated and/or coated with materials containing and/or contaminated with one or more PFAS. Arthur Mendoza was exposed to AFFF containing PFAS numerous times over the course of his career, and now (upon information and belief) has one or more PFAS materials in his blood serum.

119.    At no point during Arthur Mendoza's trainings or career did he receive any warning that Defendants' AFFF containing PFOA and/or PFAS and/or their precursor chemicals was toxic or carcinogenic.

120.    In approximately November 2016, Plaintiff Arthur Mendoza was diagnosed with kidney cancer. Arthur Mendoza suffered, and continues to suffer, the devastating effects his kidney cancer has on his everyday health as a direct and proximate result of the unreasonably dangerous and defective nature of Defendant's wrongful and negligent conduct in the design, engineering, manufacture, development, fabrication, testing, release, training and response of users, production of informational materials, handling, selling, use, and/or distribution of AFFF containing PFAS.

121.    As detailed above and below, Defendant manufacturers of AFFF, and/or underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting, through their officers, directors, partners, and/or managing agents had actual knowledge that the products were defective in the manner alleged above and took affirmative steps to conceal the defects.

## TOLLING THE STATUTE OF LIMITATIONS

### Discovery Rule Tolling

122.    Plaintiffs did not know about, and reasonably had no way of knowing about, the risk of serious injury associated with the use of and exposure to AFFF until very recently.

123.    Within the time period of any applicable statute of limitations, Plaintiffs could not have discovered, through the exercise of reasonable diligence, that exposure to AFFF is harmful to human health.

124.    Plaintiffs did not discover and did not know of facts that would cause a reasonable person to suspect the risk associated with the use of and exposure to AFFF; nor would a reasonable and diligent investigation by Plaintiffs have disclosed that AFFF could cause personal injury.

125.    For these reasons, all applicable statutes of limitations have been tolled by operation of the discovery rule with respect to Plaintiffs' claims.

### Fraudulent Concealment Tolling

126.    All applicable statute of limitations and statutes of repose have also been tolled by Defendants knowing and active fraudulent concealment and denial of the facts alleged herein throughout the time period relevant to this action.

127.    Instead of disclosing critical safety information regarding AFFF, and/or

underlying chemicals and/or products added to AFFF, Defendants have consistently and falsely represented the safety of AFFF products.

128.    This fraudulent concealment continues through present day.

129.    Due to this fraudulent concealment, all applicable statutes of limitations and statutes of repose have been tolled with respect to Plaintiffs' claims.

### Estoppel

130.    Defendants were under a continuous duty to disclose to consumers, users and other persons coming into contact with its AFFF products, including Plaintiffs, accurate safety information concerning its AFFF products, and the risks associated with the use of and/or exposure to PFOA and/or PFAS and/or their precursor chemicals.

131.    Instead, Defendants knowingly, affirmatively, and actively concealed safety information concerning AFFF products and PFOA and/or PFAS and/or their precursor chemicals and the serious risks associated with the use of and/or exposure to its AFFF products.

132.    Based on the foregoing, Defendants are estopped from relying on any statutes of limitations in defense of this action.

### Tolling Pursuant to 42 U.S.C. § 9658

133.    Plaintiffs did not know and could not have reasonably known that his personal injuries were caused by or contributed to by the use of and exposure to AFFF until sometime within the past year.

134.    The federally required commencement date for the running of the statute of limitations begins running on the date Plaintiffs knew or reasonably should have known that the personal injury was caused or contributed to by Arthur Mendoza's exposure pursuant to 42 U.S.C. § 9658.

135.    Plaintiffs did not discover and did not know of facts that would cause a reasonable person to suspect the risk associated with the use of and exposure to AFFF; nor would a reasonable and diligent investigation by Plaintiffs have disclosed that AFFF could cause personal injury.

136.    For these reasons, applicable state statutes of limitations have been tolled by operation of the discovery rule pursuant to 42 U.S.C. § 9658 with respect to Plaintiffs' claims.

## CAUSES OF ACTION
### COUNT I
### PRODUCTS LIABILITY – DEFECTIVE DESIGN – CONSUMER EXPECTATIONS

137.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint as if restated in full therein.

138.    At all times relevant to the Complaint, Defendants were regularly engaged in the design, formulation, production, creation, making, construction, assembly, rebuilding, sale, distribution, preparation, and labeling, of PFAS products.

139.    At all times pertinent to this Complaint, Defendants regularly participated in placing the PFAS products into the American stream of commerce.

140.    As manufacturers, designers, refiners, formulators, distributors, suppliers, sellers, and/or marketers of PFAS products, Defendants owed a duty to all persons whom Defendants' products might foreseeably harm, including Plaintiff Arthur Mendoza, not to manufacture, sell, and/or market any product which is unreasonably dangerous for its intended and foreseeable uses.

141.    Plaintiff Arthur Mendoza used Defendants' PFAS products in a reasonably foreseeable manner and without substantial changes in the condition in which the products were

sold.

142.    Defendants' PFAS products used by Plaintiff Arthur Mendoza did not perform as safely as an ordinary consumer would have expected the products to perform when used as Plaintiff Arthur Mendoza did in an intended or reasonably foreseeable manner because PFAS is a carcinogen and otherwise harmful to human health.

143.    Defendants' defective design of the PFAS products was far more dangerous than Plaintiff Arthur Mendoza or an ordinary consumer would expect when used, as Plaintiff Arthur Mendoza did, in an intended and reasonably foreseeable manner.

144.    Defendants' PFAS products' failure to perform safely was a substantial factor in causing Plaintiff Arthur Mendoza's harm.

145.    Defendants could have manufactured, marketed, and sold alternative designs or formulations of products that did not contain harmful PFAS chemicals.

146.    These alternative designs and/or formulations were available, practical, and technologically feasible.

147.    The use of these alternative designs would have reduced or prevented the reasonably foreseeable harm to human health that was caused by Defendants' manufacture, marketing, and/or sale of PFAS products.

148.    The risks of PFAS products were not obvious to users of the AFFF, nor were they obvious to users in the vicinity of the AFFF use, including Plaintiff Arthur Mendoza, who were unwittingly exposed to Defendants' toxic and carcinogenic chemicals. Plaintiffs could not have reasonably discovered the defects and risks associated with the use of PFAS products and could not protect themselves from exposure to Defendants' PFAS products.

149.    As a direct and proximate result of Defendants' defective design, Plaintiffs have

suffered and will continue to suffer some or all of the following damages:

a)  Medical and hospital bills for diagnosis, monitoring, and treatment of injuries;

b)  Physical injury, both temporary and permanent;

c)  Economic Damages;

d)  Severe and significant emotional distress and mental pain and suffering;

e)  Humiliation, embarrassment, and fear;

f)  Loss of enjoyment of life;

g)  Annoyance and inconvenience; and

h)  Other damages, which, under the law and circumstances, Plaintiffs are entitled to recover, including attorneys' fees and costs associated with the prosecution of this action.

150.    As a result of Defendants' design and formulation of a defective product, Defendants are strictly liable in damages to Plaintiffs.

151.    Defendants' acts were willful, wanton, reckless, and/or conducted with a reckless indifference to the rights of Plaintiffs.

## COUNT II

## PRODUCTS LIABILITY – DEFECTIVE DESIGN – RISK BENEFIT

152.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

153.    At all times relevant to the Complaint, Defendants were regularly engaged in the design, formulation, production, creation, making, construction, assembly, rebuilding, sale, distribution, preparation, and labeling, of PFAS products.

154.    At all times pertinent to this Complaint, Defendants regularly participated in placing the PFAS products into the American stream of commerce.

34

155.    As manufacturers, designers, refiners, formulators, distributors, suppliers, sellers, and marketers of PFAS products, Defendants owed a duty to all persons whom Defendants' products might foreseeably harm, including Plaintiff Arthur Mendoza, not to manufacture, sell, or market any product which is unreasonably dangerous for its intended and foreseeable uses.

156.    Defendants' PFAS products were defectively designed and manufactured when the products left the hands of the Defendants, such that the foreseeable risks associated with the use, storage, and disposal of the PFAS products exceeded the alleged benefits associated with its design and formulation.

157.    At all times relevant to this litigation, Defendants' PFAS products reached Defendants' intended consumers and users without substantial change in their condition as designed, manufactured, sold, distributed, labeled, and marketed by Defendants.

158.    Defendants' PFAS products failure to perform safely was a substantial factor in causing Plaintiff Arthur Mendoza's harm.

159.    Defendants could have manufactured, marketed, and sold alternative designs or formulations of products that did not contain harmful PFAS chemicals.

160.    These alternative designs and/or formulations were available, practical, and technologically feasible.

161.    The use of these alternative designs would have reduced or prevented the reasonably foreseeable harm to human health that was caused by the Defendants' manufacture, marketing, and sale of PFAS products.

162.    The PFAS products manufactured, sold, or distributed by the Defendants were defective in design because the foreseeable risk of harm posed by the PFAS products could have been reduced or eliminated by the adoption of a reasonable alternative design.

163.    As a direct and proximate result of Defendants' defective design, Plaintiffs have suffered and will continue to suffer some or all of the following damages:

      a)      Medical and hospital bills for diagnosis, monitoring, and treatment of injuries;

      b)      Physical injury, both temporary and permanent;

      c)      Economic Damages;

      d)      Severe and significant emotional distress and mental pain and suffering;

      e)      Humiliation, embarrassment, and fear;

      f)      Loss of enjoyment of life;

      g)      Annoyance and inconvenience; and

      h)      Other damages, which, under the law and circumstances, Plaintiffs are entitled to recover, including attorneys' fees and costs associated with the prosecution of this action.

164.    As a result of Defendants' design and formulation of a defective product, Defendants are strictly liable in damages to Plaintiffs.

165.    Defendants' acts were willful, wanton, reckless, and/or conducted with a reckless indifference to the rights of Plaintiffs.

## COUNT III

## STRICT PRODUCTS LIABILITY – FAILURE TO WARN

166.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

167.    Defendants knew or should have known: (a) exposure to AFFF containing PFAS was hazardous to the environment and to human health; (b) the manner in which they were designing, manufacturing, marketing, distributing, and selling AFFF containing PFAS, and/or underlying chemicals and/or products added to AFFF, was hazardous to human health; and (c)

the manner in which they were manufacturing, marketing, distributing, and selling AFFF containing PFAS, and/or underlying chemicals and/or products added to AFFF, would result in the contamination of Plaintiff Arthur Mendoza 's blood and/or body as a result of exposure.

168.     Defendants had a duty to warn of the hazards associated with AFFF containing PFAS entering and poisoning the blood and/or body of Plaintiff Arthur Mendoza because they knew of the dangerous, hazardous, toxic, and poisonous properties of AFFF containing PFAS. Defendants failed to provide sufficient warning to purchasers that the use of their AFFF products would cause PFAS to be released into Plaintiff Arthur Mendoza and cause the exposure and bioaccumulation of these toxic and poisonous chemicals in the blood and/or body of Plaintiff Arthur Mendoza.

169.     Adequate instructions and warnings on the AFFF containing PFAS could have reduced or avoided these foreseeable risks of harm and injury to Plaintiff Arthur Mendoza. If Defendants provided adequate warnings: (a) Plaintiff Arthur Mendoza could have and would have taken measures to avoid or lessen his exposure; and (b) end users and governments could have taken steps to reduce or prevent the release of PFASs into the blood and/or body of Plaintiff Arthur Mendoza. Defendants' failure to warn was a direct and proximate cause of Plaintiff Arthur Mendoza's injuries from PFAS that came from the use, storage, and disposal of AFFF containing PFAS. Crucially, Defendants' failure to provide adequate and sufficient warnings for the AFFF containing PFAS, and/or underlying chemicals and/or products added to AFFF, they manufactured, designed, marketed, distributed, and sold renders the AFFF a defective product.

170.     Defendants were negligent in their failure to provide Plaintiff Arthur Mendoza with adequate warnings or instruction that the use of their AFFF products would cause PFAS to be released into the blood and/or body of Plaintiff Arthur Mendoza. As a result of Defendants'

conduct and the resulting contamination, Plaintiff Arthur Mendoza has suffered, and continues to suffer, sever personal injuries by exposure to AFFF containing PFAS.

171.    Defendants' negligent failure to warn directly and proximately caused the harm to and damages suffered by Plaintiff Arthur Mendoza.

## COUNT IV

## BREACH OF EXPRESS AND IMPLIED WARRANTIES

172.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

173.    At all times relevant hereto, Defendants manufactured, marketed, labeled, and sold the AFFF products, and/or underlying chemicals and/or products added to AFFF, that have been previously alleged and described herein.

174.    At the time Defendants designed, developed, marketed, sold, labeled, and distributed the AFFF products, and/or underlying chemicals and/or products added to AFFF, Defendants knew of the use for which they were intended, and implied and/or expressly warranted that the products were merchantable, safe, and fit for the intended purpose.

175.    Defendants warranted that the products were merchantable and fit for the particular purpose for which they were intended and would be reasonably safe. These warranties were breached, and such breach proximately resulted in the injuries and damages suffered by Plaintiff Arthur Mendoza.

176.    Plaintiff Arthur Mendoza is within the class of foreseeable users and reasonably relied upon Defendants' judgment, and the implied and/or express warranties in using the products.

177.    Defendants breached their implied and/or express warranties and did not meet the

expectations for the performance of the products when used for the intended use and was neither of merchantable quality nor safe for the intended use in that the products have a propensity to cause serious injury, pain, and cancer.

## COUNT V

## NEGLIGENCE

178.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

179.    Defendants had a duty to exercise reasonable care in their design, engineering, manufacture, development, fabrication, testing, release, training and response of users, production of informational materials, handling, selling, use, and/or distribution of the inherently dangerous AFFF containing PFAS, and/or underlying chemicals and/or products added to AFFF, including a duty of care to ensure that PFAS did not infiltrate, persist in, and accumulate in the blood and/or body of Plaintiff Arthur Mendoza.

180.    Defendants owed a duty of care towards Plaintiff Arthur Mendoza that was commensurate with the inherently dangerous, harmful, injurious, bio-persistent, environmentally-persistent, toxic, and bio-accumulative nature of PFAS.

181.    Defendants failed to exercise ordinary care by acts and/or omissions that permitted, allowed, and/or otherwise resulted in the contamination of, persistence in, and accumulation in the blood and/or body of Plaintiff Arthur Mendoza with one or more PFAS, including all such acts and/or omissions referenced in this Complaint, resulting in Plaintiff Arthur Mendoza having one or more PFAS in his blood.

182.    Defendants knew, foresaw, anticipated, and/or should have foreseen, anticipated, and/or known that the design, engineering, manufacture, fabrication, sale, release, training and

response of users, production of informational materials, handling, use, and/or distribution of AFFF containing PFAS, and/or underlying chemicals and/or products added to AFFF, and/or other acts and/or omissions as described in this Complaint could likely result in the contamination of the blood and/or body of Plaintiff Arthur Mendoza and its persistence and accumulation in his blood and/or body.

183.    Despite knowing, anticipating, and/or foreseeing the bio-persistent, bio-accumulative, toxic, and/or otherwise harmful and/or injurious nature of AFFF containing PFAS, Defendants, their agents, servants, and/or employees, committed negligent acts and/or omissions that resulted in the contamination of the blood and/or body of Plaintiff Arthur Mendoza with one or more PFAS materials, and the biopersistence and bioaccumulation of such PFAS in his blood and/or body.

184.    Defendants, through their acts and/or omissions as described in this Complaint, breached their duty to Plaintiff Arthur Mendoza.

185.    It was reasonably foreseeable to Defendants that Plaintiff Arthur Mendoza would likely suffer the injuries and harm described in this Complaint by virtue of Defendants' breach of their duty and failure to exercise ordinary care, as described herein.

186.    But for Defendants' negligent and/ or gross negligent acts and/or omissions, Plaintiff Arthur Mendoza would not have been injured or harmed.

187.    Defendants' negligent conduct was the direct and proximate cause of the injuries and harm to Plaintiffs, and Plaintiffs have suffered and will continue to suffer some or all of the following damages:

a)    Medical and hospital bills for diagnosis, monitoring, and treatment of injuries;

b)    Physical injury, both temporary and permanent

c)   Economic damages;

d)   Severe and significant emotional distress and mental pain and suffering;

e)   Humiliation, embarrassment, and fear;

f)   Loss of enjoyment of life;

g)   Annoyance and inconvenience; and

h)   Other damages, which, under law and circumstances, Plaintiffs are entitled to recover, including attorneys' fees and fees associated with the prosecution of this action.

## COUNT VI

## FRAUDULENT CONCEALMENT

188.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs s of this Complaint as if restated in full herein.

189.   Throughout the relevant time period, Defendants knew that their products were defective and unreasonably unsafe for their intended purpose.

190.   Defendants fraudulently concealed from and/or failed to disclose to or warn Plaintiff Arthur Mendoza and the public that their products were defective, unsafe, and unfit for the purposes intended, and that they were not of merchantable quality.

191.   Defendants were under a duty to Plaintiff Arthur Mendoza and the public to disclose and warn of the defective and harmful nature of the products because:

a)   Defendants were in a superior position to know the true quality, safety and efficacy of Defendants' products;

b)   Defendants knowingly made false claims about the safety and quality of the Defendants' product in documents and marketing materials; and

c)   Defendants fraudulently and affirmatively concealed the defective nature of Defendants' products from Plaintiff Arthur Mendoza.

192.   The facts concealed and/or not disclosed by Defendants to Plaintiff Arthur

Mendoza were material facts that a reasonable person would have considered to be important in deciding whether or not to purchase and/or use Defendants' products.

193.    Defendants intentionally concealed and/or failed to disclose the true defective nature of the products so that Plaintiff Arthur Mendoza would use Defendants' products, he justifiably acted or relied upon, to his detriment, the concealed and/or non-disclosed facts as evidenced by Plaintiff Arthur Mendoza's use of Defendants' products.

194.    Defendants, by concealment or other action, intentionally prevented Plaintiff Arthur Mendoza from acquiring material information regarding the lack of safety and effectiveness of Defendants' products and are subject to the same liability to Plaintiff Arthur Mendoza for his pecuniary losses, as though Defendants had stated the non-existence of such material information regarding Defendants' products' lack of safety and effectiveness and dangers and defects, and as though Defendants had affirmatively stated the non-existence of such matters that Plaintiff Arthur Mendoza was thus prevented from discovering the truth. Defendants therefore have liability for fraudulent concealment under all applicable laws, including, inter alia, Restatement (Second) of Torts §550 (1977).

195.    As a proximate result of Defendants' conduct, Plaintiff Arthur Mendoza has been injured, and sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, comfort, and economic damages.

**COUNT VII**

**NEGLIGENCE PER SE**

196.    Plaintiffs incorporate herein by reference each and every paragraph of this Complaint as though set forth in full in this cause of action.

197.    One or more federal statutes, including but not limited to 15 U.S.C. §§ 2607 and

2614, 33 U.S.C. §§ 1311(a) and 1342, and 42 U.S.C. §§ 300i-1 and 6921-6939e, impose duties of care on Defendants with regard to Defendants' actions and/or omissions towards Plaintiff Arthur Mendoza and/or his safety.

198.    By Defendants' acts and/or omissions resulting in harm to Plaintiff Arthur Mendoza, Defendants violated and/or continue to violate and/or breach one or more federal statutes and/or duties, including but not limited to 15 U.S.C. §§ 2607 and 2614, 33 U.S.C. §§ 1311(a) and 1342, and 42 U.S.C. §§ 300i-1 and 6921-6939e, constituting negligence per se, including liability for all injuries to Plaintiff Arthur Mendoza associated with the fluorochemical products.

199.    Defendants' violation of law and breach of its statutory duties directly and proximately caused and continue to directly and proximately cause damage to Plaintiff Arthur Mendoza in the form of economic damage and bodily injury for which Defendants are liable.

### COUNT VIII

### PAST AND CONTINUING TRESPASS AND BATTERY

200.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

201.    At all relevant times, Defendants possessed knowledge that the AFFF containing PFAS, and/or underlying chemicals and/or products added to AFFF, which they designed, engineered, manufactured, fabricated, sold, handled, released, trained users on, produced instructional materials for, used, and/or distributed were bio-persistent, bio- accumulative, toxic, potentially carcinogenic, and/or otherwise harmful/injurious and that their continued manufacture, use, sale, handling, release, and distribution would result in Plaintiff Arthur Mendoza having PFAS in his blood, and the biopersistence and bioaccumulation of such PFAS

in his blood.

202.    However, despite possessing such knowledge, Defendants knowingly, purposefully, and/or intentionally continued to engage in such acts and/or omissions, including but not limited to all such acts and/or omissions described in this Complaint, that continued to result in Plaintiff Arthur Mendoza accumulating PFAS in his blood and/or body, and such PFAS persisting and accumulating in his blood and/or body.

203.    Defendants' continued actions with knowledge that such actions will result in harmful physical contact with Plaintiff Arthur Mendoza demonstrates intent and/or reckless indifference by Defendants without regard to the harm they have caused and will cause.

204.    Entry into, persistence in, and accumulation of such PFAS in Plaintiff Arthur Mendoza's body and/or blood without permission or consent is an unlawful and harmful and/or offensive physical invasion and/or contact with Plaintiff Arthur Mendoza's persons and unreasonably interferes with Plaintiff Arthur Mendoza's rightful use and possession of Plaintiff Arthur Mendoza's blood and/or body.

205.    Defendants did not seek or obtain permission or consent from Plaintiff Arthur Mendoza to put or allow PFAS materials into his blood and/or body, or to persist in and/or accumulate in his blood and/or body.

206.    At all relevant times, the PFAS present in the blood of Plaintiff Arthur Mendoza originated from Defendants' acts and/or omissions.

207.    Defendants continue to knowingly, intentionally, and/or purposefully engage in acts and/or omissions that result in the unlawful and unconsented-to physical invasion and/or contact with Plaintiff Arthur Mendoza that results in persisting and accumulating levels of PFAS in his blood.

208.    Plaintiff Arthur Mendoza, and any reasonable person, finds the contact at issue harmful and/or offensive.

209.    Defendants acted intentionally with the knowledge and/or belief that the contact, presence and/or invasion of PFAS with, onto and/or into Plaintiff Arthur Mendoza's blood serum, including its persistence and accumulation in such serum, was substantially certain to result from those very acts and/or omissions.

210.    Defendants' intentional acts and/or omissions resulted directly and/or indirectly in harmful contact with Plaintiff Arthur Mendoza's blood and/or body.

211.    The continued presence, persistence, and accumulation of PFAS in the blood and/or body of Plaintiff Arthur Mendoza is offensive, unreasonable, and/or harmful and constitutes a continuing and/or permanent trespass and battery.

212.    The presence of PFAS in the blood and/or body of Plaintiff Arthur Mendoza has altered the structure and/or function of such blood and/or body parts and resulted in cancer.

213.    As a direct and proximate result of the foregoing acts and omissions, Plaintiff Arthur Mendoza suffered and continues to suffer physical injury for which Defendants are therefore liable.

## COUNT IX

## NEGLIGENT, INTENTIONAL, AND RECKLESS INFLICTION OF EMOTIONAL DISTRESS

214.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

215.    Defendants' acts and/or omissions were negligent, intentional, and/or reckless, including Defendants' continued pollution of the environment and the resultant exposure of

Plaintiff Arthur Mendoza to harmful PFAS products, despite knowing for decades that such exposure was causing and would continue to cause harm and/or unacceptable risk of harm to Plaintiff Arthur Mendoza.

216.    Defendants negligently, knowingly and/or intentionally withheld and concealed material information from and/or affirmatively misrepresented to Plaintiff Arthur Mendoza that they were exposed to harmful PFAS products and/or that the PFAS products were not causing or creating any risk of harm to them, despite knowing at the time these concealments and/or misrepresentations were made that the PFAS products were causing and would continue to cause harm and/or unacceptable risk of harm to persons, including Plaintiff Arthur Mendoza.

217.    At the time of Defendants' negligent, knowing, and/or intentional acts and/or omissions, it was foreseeable to Defendants and Defendants were certain and/or substantially certain that its actions and/or omissions would cause emotional distress to Plaintiff Arthur Mendoza.

218.    Defendants' acts and/or omissions were extreme, outrageous, intolerable, and/or offended the generally accepted standards of decency and morality.

219.    By continuing to expose Plaintiff Arthur Mendoza to harmful PFAS products, and continuing to misrepresent to Plaintiff Arthur Mendoza that the PFAS products were not and would not cause them harm or risk of harm, and/or continuing to withhold and/or conceal from Plaintiff Arthur Mendoza material information on such issues, despite knowing that the PFAS products were causing and would continue to cause harm and/or risk of harm, Defendants acted in an extreme, outrageous, and intolerable manner which offended any generally accepted standard of decency and morality.

220.    Defendants' acts and/or omissions resulting in Defendants' concealment and/or

misrepresentations, directly and proximately caused physical harm, and continue to cause physical harm, to Plaintiff Arthur Mendoza.

221.    Defendants' extreme, outrageous and intolerable actions were a substantial factor in causing Plaintiff Arthur Mendoza to suffer severe physical, mental, and emotional distress.

222.    As a direct and proximate result of Defendants' extreme, outrageous and intolerable actions, Plaintiff Arthur Mendoza has and will continue to suffer severe physical, mental, and emotional distress.

223.    No reasonable person could be expected to endure the mental anguish caused by the knowledge that entities have negligently, knowingly, and/or intentionally exposed them to years of harmful contact with AFFF containing PFOA or PFOS and/or their precursor chemicals and has furthermore actively misrepresented and/or concealed such danger from them while reaping hundreds of millions of dollars in profits as a direct and proximate result.

## COUNT X

## WANTONNESS

224.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

225.    Defendants and their employees, agents, officers, and representatives owed a duty of care to end users of their AFFF products, including Plaintiff Arthur Mendoza.

226.    Defendants breached the duty of care owed to Plaintiff Arthur Mendoza.

227.    The actions of Defendants and their employees, agents, officers, and representatives were willful and wanton and exhibited a reckless disregard for the life, health, and safety of the end users of Defendants' AFFF products, including Plaintiff Arthur Mendoza.

228.    As a proximate and foreseeable consequent of the actions of Defendants, Plaintiff

Arthur Mendoza was exposed to unreasonably dangerous toxic PFAS containing AFFF, which caused Plaintiff Arthur Mendoza's injury.

## COUNT XI

## PUNITIVE DAMAGES

229.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

230.     Upon information and belief, Defendants engaged in willful, wanton, malicious, and or/reckless conduct that was done without regard to the consequences or the safety of Plaintiff Arthur Mendoza and caused the foregoing injuries upon Plaintiff Arthur Mendoza, disregarding his protected rights.

231.     Defendants' willful, wanton, malicious, and/or reckless conduct includes but is not limited to Defendants' failure to take all reasonable measures to ensure Plaintiff Arthur Mendoza was not exposed to PFAS which Defendants knew were linked to serious medical conditions.

232.     Defendants have caused significant harm to Plaintiff Arthur Mendoza and have demonstrated a conscious and outrageous disregard for his safety with implied malice, warranting the imposition of punitive damages.

## COUNT XII

## LOSS OF CONSORTIUM

233.     Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth herein, and further allege:

234.     Plaintiff Mary Lou Mendoza, at all times relevant, was the lawful wife of Arthur Mendoza.

235.    As a direct, legal, and proximate result of the culpability and fault of Defendants, be such fault through strict liability, negligence or otherwise, Plaintiff Mary Lou Mendoza suffered the loss of support, services, love, companionship, affection, society, intimate relations, and other elements of consortium, all to her general damage in an amount in excess of the jurisdictional minimum of this Court.

236.    Plaintiffs demand judgment against Defendant for compensatory and punitive damages such as a jury may award, and such other relief as the Court deems just and proper in order to remedy Plaintiff Mary Lou Mendoza's loss of consortium.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request the Court enter judgment against the Defendants on each of the above-referenced claims as follows:

a)    Finding Defendants jointly, severally and solidarily liable for past, present and future damages suffered by Plaintiffs;

b)    Awarding compensatory damages in excess of the jurisdictional amount, including, but not limited to pain, suffering, emotional distress, loss of enjoyment of life, and other non-economic damages in an amount to be determined at trial of this action;

c)    Awarding economic damages in the form of medical expenses, out of pocket expenses, lost earnings and other economic damages in an amount to be determine at trial of this action;

d)    Punitive and/or exemplary damages for the wanton, willful, fraudulent, reckless acts of the Defendants who demonstrated a complete disregard and reckless indifference for the safety and welfare of the general public and to Plaintiffs in an amount sufficient to punish Defendants and deter future similar conduct;

e)    An order finding Defendants liable for conspiracy in the manner described herein;

f)    Prejudgment interest;

g)    Post-judgment interest;

h)    Awarding Plaintiffs reasonable attorneys' fees when applicable;

i)    Awarding Plaintiffs the costs of these proceedings; and

j)    Such other and further relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b), Fed. R. Civ. P., Plaintiffs hereby demand a jury trial on all claims.

Dated: January 13, 2023

**SINGLETON SCHREIBER, LLP**

By:    */s/ Christopher R. Rodriguez*
Christopher R. Rodriguez, Esq.
CA State Bar No. 212274 (Pro Hac Vice)
crodriguez@singletonschreiber.com
Andrew Bluth, Esq.
CA State Bar No. 232387 (Pro Hac Vice)
abluth@singletonschreiber.com
Trent Nelson, Esq.
CA State Bar No. 340185 (Pro Hac Vice)
tnelson@singletonschreiber.com
YuQing Min, Esq.
CA State Bar No. 347239 (Pro Hac Vice)
emin@singletonschreiber.com
1414 K Street, Suite 470
Sacramento, CA 95814
Phone: (916) 248-8478

*Attorneys for Plaintiffs*